**UNITED STATES BANKRUPTCY COURT**
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In Re:<br><br>ANGELA D. RODGERS,<br>Debtor. | CHAPTER 13<br><br>CASE NO. 14-60678-BEM |
| BAYVIEW LOAN SERVICING, LLC, A DELAWARE LIMITED LIABILITY COMPANY<br><br>Movant,<br><br>V.<br><br>ANGELA D. RODGERS, Debtor, and MARY IDA TOWNSON, Chapter 13 Trustee,<br><br>Respondents. | CONTESTED MATTER |

**NOTICE OF ASSIGNMENT OF HEARING**

PLEASE TAKE NOTICE that Bayview Loan Servicing, LLC, a Delaware Limited Liability Company, has filed a Motion to Approve Loan Modification and related papers with the Court seeking an order approving the loan modification.

**PLEASE TAKE FURTHER NOTICE that the Court will hold a hearing on the Motion to Approve Loan Modification in United States Bankruptcy Courthouse, Richard B. Russell Federal Building, 75 Ted Turner Drive, SW, Atlanta, GA 30303, Courtroom 1402 at 11:00 A.M. on March 13, 2018.** Your rights may be affected by the Court's ruling on these pleadings. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult

one.)  If you do not want the Court to grant the relief sought in these pleadings, or if you want the Court to consider your views, then you and/or your attorney must attend the hearing.  You may file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so.  If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response.  Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing.  The address for the Clerk's Office is:   U.S. Bankruptcy Court, Richard B. Russell Federal Building, 75 Ted Turner Drive, SW, Room 1340, Atlanta GA 30303.  You must also mail a copy of your response to the undersigned at the address stated below.

In the event a hearing cannot be held within thirty (30) days from the filing of said Motion, as required by 11 U.S.C. Section 362, Movant, by and through counsel, waives this requirement and agrees to the next earliest possible date, as evidenced by the signature below. If a final decision is not rendered by the Court within sixty (60) days of the date of the request, Movant waives the requirement that a final decision be issued within that period.

The undersigned consents to the automatic stay remaining in effect with respect to Movant until the court orders otherwise.

Dated: February 20, 2018

Shapiro Pendergast & Hasty, LLP

  /s/ Elizabeth Childers
Elizabeth Childers
Georgia Bar No.  143546
211 Perimeter Center Parkway, N.E.
Suite 300
Atlanta, GA 30346
Phone: (770) 220-2535
Fax: (770) 220-2665
echilders@logs.com

**UNITED STATES BANKRUPTCY COURT**
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In Re:<br><br>ANGELA D. RODGERS,<br>Debtor. | CHAPTER 13<br><br>CASE NO. 14-60678-BEM |
| BAYVIEW LOAN SERVICING, LLC, A DELAWARE LIMITED LIABILITY COMPANY<br><br>Movant,<br><br>V.<br><br>ANGELA D. RODGERS, Debtor, and MARY IDA TOWNSON, Chapter 13 Trustee,<br><br>Respondents. | CONTESTED MATTER |

**MOTION TO APPROVE LOAN MODIFICATION**

COMES NOW, Bayview Loan Servicing, LLC, a Delaware Limited Liability Company, its successors or assigns, (hereinafter referred to as “Movant”), a secured creditor of the above named Debtors, and respectfully shows the Court as follows:

1.

Angela D. Rodgers (hereinafter known as the “Debtor”), filed a Petition for Relief under 11 U.S.C. Chapter 13 of the Bankruptcy Code on May 31, 2014, and is therefore subject to the jurisdiction of this Court.

2.

This court has jurisdiction over the Motion pursuant to 11 U.S.C. § 362.

3.

Movant is a secured creditor of Angela D. Rodgers pursuant to a Note and Security Deed. The Promissory Note is dated August 12, 2004 and is in the original principal amount of $159,400.00. The Promissory Note is secured by a Security Deed which conveys certain property now or formerly known as 3261 Harvester Woods Road, Decatur, GA 30034, a true and correct copy of which is attached hereto and referred to herein as Exhibit "A". Said Security Deed is recorded in Deed Book 16552, Page 537, Dekalb County.

4.

Movant affirmatively alleges that Debtors have entered into a Loan Modification with Movant, a copy of which is attached hereto as Exhibit "B", and Movant seeks Court approval permitting same. The modified principal loan amount will be $145,197.20 to be paid at an interest rate of 2.819%, at $887.27 per month, beginning March 1, 2018.

5.

Pursuant to 11 U.S.C. § 362, Movant is entitled to a modification of the Automatic Stay with respect to its secured property to allow for a loan modification.

WHEREFORE, Movant respectfully prays to the Court as follows:

    (1)    That the modification be approved by this Court, and

     (2) For such other and further relief as this Court deems necessary and appropriate.

Dated: February 20, 2018

Shapiro Pendergast & Hasty, LLP

/s/ Elizabeth Childers

Elizabeth Childers
Georgia Bar No. 143546
211 Perimeter Center Parkway, N.E.
Suite 300
Atlanta, GA 30346
Phone: (770) 220-2535
Fax: (770) 220-2665
echilders@logs.com

**CERTIFICATE OF SERVICE**

I certify that I am over the age of 18 and that on February 20, 2018, I served a copy of the foregoing Motion to Approve Loan Modification by electronic mail or first class U.S. Mail, with adequate postage prepaid, on the following persons or entities at the addresses stated below:

Angela D. Rodgers
3261 Harvester Woods Road
Decatur, GA 30034

Jonathan A Proctor
The Semrad Law Firm, LLC
303 Perimeter Center North, #201
Atlanta, GA 30346

Mary Ida Townson
Chapter 13 Trustee
Suite 2200
191 Peachtree Street, NE
Atlanta, GA 30303-1740

Dated: February 20, 2018

Shapiro Pendergast & Hasty, LLP

/s/ Elizabeth Childers

Elizabeth Childers
Georgia Bar No. 143546
211 Perimeter Center Parkway, N.E.
Suite 300
Atlanta, GA 30346
Phone: (770) 220-2535
Fax: (770) 220-2665
echilders@logs.com



Bayview Loan Servicing, LLC
4425 Ponce de Leon Blvd. 5th Floor
Coral Gables, FL 33146

# NOTICE OF LOAN MODIFICATION AGREEMENT ADJUSTMENT

February 14, 2018

ANGELA D RODGERS and GWENDOLYN T COOK-SIMS
3261 HARVESTER WOODS RD
DECATUR, GA 30034-0000

**Loan Number:** [redacted] **Property Address:** 3261 HARVESTER WOODS ROAD
DECATUR, GA 30034-0000

Dear Customer:

Congratulations! Based upon your successful completion of the trial plan period, and a final review of the loan modification terms, the preliminary figures of your loan modification have been finalized as follows:

1. **New Principal Balance:** $145,197.20 , including the existing unpaid principal balance of $139,906.14 plus the capitalized unpaid installments, interest, late charges, fees and costs, and if applicable, advances for unpaid property taxes and/or insurance premiums increased by $5,291.06. There may be prior deferment or forgiveness related to this loan or this current Agreement. There could be tax consequences related to this deferment or forgiveness, you are advised to seek guidance from an independent tax professional.
2. **New Monthly Payment:** $887.27 , including monthly principal and interest payment of $504.75 , plus estimated monthly escrow payment of $382.52 .
3. **New Interest Rate:** 2.819%
4. **New Maturity Date:** 02/01/2058

5. **New Monthly Payments, Payment Adjustments:**

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.819% | 02/01/2018 | $504.75 | $382.52 | $887.27 | 03/01/2018 | 60 |
| 6 | 3.819% | 02/01/2023 | $581.73 | Adjust Annually | Adjust Annually | 03/01/2023 | 12 |
| 7 | 4.819% | 02/01/2024 | $662.39 | Adjust Annually | Adjust Annually | 03/01/2024 | 12 |
| 8 | 5.819% | 02/01/2025 | $746.13 | Adjust Annually | Adjust Annually | 03/01/2025 | 12 |
| 9-40 | 6.500% | 02/01/2026 | $804.46 | Adjust Annually | Adjust Annually | 03/01/2026 | 384 |

Please note, you do not need to submit any additional documents to us and no further action is necessary on your part. To the extent that you continue to make payments on this loan, such payments will constitute acceptance of these changes.

If you are under active bankruptcy at the time of the modification, you may need court approval to complete a modification on your loan. Please contact your attorney, trustee or your designated bankruptcy court if you have doubt on whether you need bankruptcy court approval to modify your loan.

The modification agreement is contingent on resolving any pending subordination, judgment, and or lien attached to your property. Failure to resolve subordination, judgments, and or liens may result in the modification agreement being withdrawn or denied.

If you have any questions regarding the above, please do not hesitate to call our Customer Service Department at (800) 457-5105, Monday through Friday 8:00 a.m. - 7:00 p.m. ET.

2

Sincerely,

Customer Service Department
Bayview Loan Servicing, LLC

Bayview Loan Servicing, LLC is a debt collector. This letter is an attempt to collect a debt and any information obtained will be used for that purpose. To the extent that your obligation has been discharged or is subject to an automatic stay of bankruptcy this notice is for compliance and informational purposes only and does not constitute a demand for payment or any attempt to collect such obligation. Bayview Loan Servicing, LLC., NMLS #2469.

**The following mailing address must be used for all Error Notices & Information Requests: Bayview Loan Servicing, LLC, Customer Support, 4425 Ponce de Leon Boulevard, 5th Floor, Coral Gables, FL 33146.**

Date Received: February 12, 2018

Loan Number: [redacted]

DM
df

BAYVIEW
LOAN SERVICING, LLC

## Original Doc Checklist

***Initial as each procedure has been completed, noting N/A if not applicable to you.***

BF — Enclosed are (2) TWO original copies of Modification Agreement, fully executed and notarized, in the pre-paid FedEx envelope.

Note: Please make sure the borrower did not use whiteout or make any alterations to the documents.

✓ — Confirm properties located in **Connecticut, Georgia, Louisiana** and **South Carolina** have (2) two witness signatures and date on the Modification Agreement. **(Opp Fund does NOT require witness signatures)**

BF — Confirm all dates of the borrower, co-borrower, and notary signatures match.

✓ — If applicable - A clean copy of both the recorded Divorce Decree and the recorded Quit Claim Deed are included.

✓ — If applicable - A clean copy of the Death Certificate is included.

✓ — If applicable - A clean copy of the Marriage License is included.

---

Before signing this document, verify that the content you are signing is correct.

BF
**Workout Coordinator Signature**

**2/12/18**
**Date**

# Loan Modification Agreement

**Modification Effective Date:** 3/1/2018
**Borrower(s):** ANGELA D RODGERS GWENDOLYN T COOK-SIMS

**Loan Number:** [redacted]
**Servicer:** Bayview Loan Servicing, LLC
**Original Promissory Note ("Note"):** 8/12/2004
**Original Principal Balance:** $159,400.00

**Deed of Trust/Mortgage ("Security Instrument"):** Deed of Trust or Mortgage securing the Note and creating a lien on certain real property ("Property") owned by Borrower.

**Borrower and Servicer agree to the following:**

1. **New Principal Balance:** $146,372.26, including the existing unpaid principal balance of $140,582.76 plus the capitalized unpaid installments, interest, late charges, fees and costs, and if applicable, advances for unpaid property taxes and/or insurance premiums increased by $5,789.5. There may be prior deferment or forgiveness related to this loan or this current Agreement. There could be tax consequences related to this deferment or forgiveness, you are advised to seek guidance from an independent tax professional. If your loan was a daily simple interest loan, once converted the loan will be modified into a standard amortizing loan.
2. **New Monthly Payment;** $810.53, including monthly principal and interest payment of $508.84, plus monthly escrow payment of $301.69.
3. **New Interest Rate:** 2.819%
4. **New Maturity Date:** 2/1/2058
5. **New Monthly Payments, Payment Adjustments:**

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal & Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 - 5 | 2.819% | 2/1/2018 | $508.84 | $301.69 | $810.53 | 3/1/2018 | 60 |
| 6 | 3.819% | 2/1/2023 | $586.44 | Adjusted Annually | Adjusted Annually | 3/1/2023 | 12 |
| 7 | 4.819% | 2/1/2024 | $667.75 | Adjusted Annually | Adjusted Annually | 3/1/2024 | 12 |
| 8 | 5.819% | 2/1/2025 | $752.17 | Adjusted Annually | Adjusted Annually | 3/1/2025 | 12 |
| 9-40 | 6.500% | 2/1/2026 | $810.97 | Adjusted Annually | Adjusted Annually | 3/1/2026 | 384 |

Borrower acknowledges that Servicer will establish an impound/escrow account for the collection of property taxes and insurance premiums if such account is not currently in existence. Servicer will analyze the impound/escrow account from time to time. As a result of this analysis, the escrow portion of Borrower's monthly payment may change. Borrower further acknowledges that the escrow portion of his/her monthly payment may be substantially higher than the estimate. (Note: In certain states, impound/escrow accounts do not collect for payment of taxes pertaining to Bond/Special Assessments and Irrigation/Water District).

Notice: This agreement may contain preliminary figures that may change depending on a final review once the trial period has been completed. Should adjustments be necessary, a notice will be sent to you with the details of the updates.

No Other Changes: Except as expressly adjusted by this Agreement, all of the covenants, agreements, stipulations, and conditions in the Note and the Security Instrument remain unmodified and in full force and effect. The Security Instrument continues to secure on a first and prior lien basis the due and punctual payments of the Note, as modified by this Agreement. Borrower is encouraged to review this Agreement with his/her legal advisor prior to signing it, but by signing the below Borrower has voluntarily signed this Agreement.

IN WITNESS WHEREOF, Servicer and Borrower have executed this Loan Modification Agreement,

Borrower:

By: _Angela D Rdge.s_          Date: _11/15/2017_
ANGELA D RODGERS

By: _Gwendolyn J Cock-Sims_     Date: _November 19, 2017_
GWENDOLYN T COOK-SIMS


Servicer:

By: _____          Date: **FEB 1 2 2018**
Vice-President, Bayview Loan Servicing, LLC

Rafael Alvarez
Assistant Vice President

| | |
|---|---|
| Licensed Loan Originator: | Kenya Belliveau |
| MLO License Number: | 976245 |
| Direct Phone Number: | 877-650-0140 |
| Monday – Friday, | 9:00am to 6:00pm ET |
| Fax Number: | 877-360-9593 |

AM883 Step Streamline Mod Agreement Ltr SLNT V1.0 Loan No. ▇▇▇▇1004



BAYVIEW
LOAN SERVICING

Loan No [redacted]

SERVICER SIGNATURE:

STATE OF FLORIDA §
§
COUNTY OF MIAMI DADE §

On 2/12/2018, before me, CHRISTOPHER RENDON, a notary public for and within the said county, personally appeared, RAFAEL ALVAREZ of Bayview Loan Servicing, LLC, as Servicer, whose address is 4425 Ponce de Leon Blvd, 5th Floor, Coral Gables, Florida 33146, personally known to me (or provided to me on the basis of satisfactory evidence) to be the person(s) whose name is subscribed to the within instrument and acknowledge to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person acted, executed the instrument.

WITNESS my hand and official seal.

By: [signature]
Notary Public: Christopher Rendon
Notary Public for the State of Florida
My commission expires: 07/05/2021
Commission # GG121513

CHRISTOPHER RENDON
MY COMMISSION #GG121513
EXPIRES July 5, 2021
(407) 398 0153 FloridaNotaryService.com



Deed Book 16552 Pg 537
Filed and Recorded Sep-02-2004 10:31am
2004-0174967
Georgia Intangible Tax Paid $478.50
Linda Carter
Clerk of Superior Court
Dekalb County, Georgia

Countrywide
Rol LNS

Prepared By:
HomeBanc Mortgage Corporation
2002 Summit Boulevard
Suite 100
Atlanta, GA 30319

YOLANDA WILLIAMS-FAVORS, PC
2175 NORTHLAKE PARKWAY
STE. 134, BLDG. 4
TUCKER, GA 30084

[Space Above This Line For Recording Data]

LOAN #

State of Georgia

# SECURITY DEED

FHA Case No.

THIS SECURITY DEED ("Security Instrument") is given on August 12 2004. The Grantor is

Angela D. Rodgers,
Gwendolyn T. Cook-Sims,
,
,

, and whose address is 3261 Harvester Woods Road Decatur, GA 30034

("Borrower"). This Security Instrument is given to HomeBanc Mortgage Corporation, which is organized and existing under the laws of The State of Delaware, and whose address is 2002 Summit Blvd. Suite 100 Atlanta, GA 30319 ("Lender"). Borrower owes Lender the principal sum of One Hundred Fifty Nine Thousand Four Hundred and no/100---------------------------------------------------------------------- Dollars (U.S. $ 159,400.00 ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which

08/12/04
11:41:56
Angela D. Rodgers

LOAN #

provides for monthly payments, with the full debt, if not paid earlier, due and payable on September 1, 2034. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to the Lender and Lender's successors and assigns, with power of sale, the following described property located in DeKalb County, Georgia:

See Exhibit "A" attached hereto and made part hereof by reference thereto.

Parcel ID Number:
which has the address of 3261 Harvester Woods Road [Street] Decatur [City], Georgia 30034 [Zip Code] ("Property Address");

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures

Deed Book 16552 Pg 538

08/12/04
11:41:56
Angela D. Rodgers

Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or

08/12/04
11:41:56
Angela D. Rodgers

abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

Initials: ady/ [illegible]

08/12/04
11:41:56
Angela D. Rodgers

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

08/12/04
11:41:56
Angela D. Rodgers

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

08/12/04
11:41:56
Angela D. Rodgers

**18. Foreclosure Procedure. If Lender requires immediate payment in full of all sums under paragraph 9, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.**

**Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.**

**If the Property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**21. Assumption not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**22. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

[ ] Condominium Rider
[X] Planned Unit Development Rider
___ Adjustable Rate Rider
[ ] Growing Equity Rider
[ ] Graduated Payment Rider
[ ] Other [specify]
Waiver of Borrower's Rights and the Closing Attorney's Affidavit

Initials: adr/BJCS



08/12/04
11:41:56
Angela D. Rodgers

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_______________ (Seal) -Borrower

Angela D. Rodgers (Seal) -Borrower

_______________ (Seal) -Borrower

Gwendolyn T. Cook-Sims (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

**STATE OF GEORGIA,** DeKalb County ss:

Signed, sealed and delivered in the presence of:

Unofficial Witness

Notary Public, State of Georgia County

YOLANDA ... MY COMMISSION EXPIRES AUG 1 2005 DEKALB CO., GEORGIA NOTARY PUBLIC

08/12/04
11:41:56
Angela D. Rodgers

LOAN #

Deed Book 16552 Pg 545

FHA Case No.

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 12th day of August, 2004, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to

HomeBanc Mortgage Corporation

("Lender") of the same date and covering the Property described in the Security Instrument and located at:

3261 Harvester Woods Road
Decatur, GA 30034
[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as

HARVEST WOODS

[Name of Planned Unit Development]

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

08/12/04
11:41:58
Angela D. Rodgers

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_______________ (Seal) -Borrower
Angela D. Rodgers

_______________ (Seal) -Borrower
Gwendolyn T. Cook-Sims

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

08/12/04
11:41:58
Angela D. Rodgers

COMMITMENT NO.: [redacted]

EXHIBIT A
LEGAL DESCRIPTION

All that tract or parcel of land lying and being in Land Lot 93 of the 15th District of DeKalb County, Georgia, being Lot 2, Block:"B", Harvester Community Subdivision, as per plat recorded in Plat Book 87, Page 138, in the Office of the Clerk of Superior Court of DeKalb County, Georgia, which recorded plat is incorporated herein by reference and made a part of this description.

Angela D Rodgers / Gwendolyn L. Cook-Sims

for Joseph Mahoney G.P

GEORGIA -

Deed Book 16552 Pg 548
Linda Carter
Clerk of Superior Court
Dekalb County, Georgia

GRANTOR: Angela D. Rodgers
Gwendolyn T. Cook-Sims

LENDER: HomeBanc Mortgage Corporation

DATE OF SECURITY DEED: August 12, 2004

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, Sealed and delivered in the presence of:

Notary Public

Angela D. Rodgers (Seal) -Grantor

Gwendolyn T. Cook-Sims (Seal) -Grantor

(Seal) -Grantor

(Seal) -Grantor

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the date set forth above.

Notary Public

Yolanda Williams-Fay Closing Attorney

## FORECLOSURE CLOSING DISCLOSURE

**O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.**

Angela D. Rodgers

Gwendolyn T. Cook-Sims

Deed Book 17753 Pg 50
Filed and Recorded Aug-09-2005 11:49am
2005-0151588
Linda Carter
Clerk of Superior Court
DeKalb County, Georgia

Recording requested by
Countrywide Home Loans, Inc.

When recorded mail to:
Countrywide Home Loans Inc.
1800 Tapo Canyon Road SV-79
Simi Valley, CA 93063
Attn: ASSIGNMENT UNIT

CORPORATION ASSIGNMENT OF MORTGAGE

Doc. ID#
Commitment#

For value received, the undersigned, Countrywide Home Loans, Inc., 1800 Tapo Canyon Road, Simi Valley, CA 93063, hereby grants, assigns and transfers to:
Countrywide Home Loans Servicing LP
1800 Tapo Canyon Road Simi Valley, CA 93063

All its interest under that certain Mortgage dated 8/12/04, executed by: ANGELA D RODGERS & GWENDOLYN T COOK-SIMS, Mortgagor as per MORTGAGE recorded as Instrument No. 2004-0174967 on 9/02/04 in Book 16552 Page 537 of official records in the County Recorder's Office of DEKALB County, GEORGIA.
Tax Parcel = 15 093 12 015, DEKALB COUNTY TAX COMMISSIONER
Original Mortgage $159,400.00
3261 HARVESTER WOODS ROAD, DECATUR, GA 30034

Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Mortgage.

Dated: 07/01/2005 Countrywide Home Loans, Inc.

By
Heidi Smalley, Assistant Secretary

Witness:
Sumattie Singh

State of California
County of Ventura

On 07/~~01~~ 08 05/2005 before me, Ben Santiago, personally appeared Heidi Smalley, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their duly authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the persons acted, executed the instrument. Witness my hand and official seal.

Signature:
Ben Santiago

Prepared by: Assignment Unit
1800 Tapo Canyon Rd SV-79
Simi Valley, CA 93063
Phone#: (805) 577-4722 Ext: 4722

BEN SANTIAGO
COMM. #1550281
NOTARY PUBLIC - CALIFORNIA
VENTURA COUNTY
My Commission Exp. Feb. 05, 2009

Deed Book 20402 Pg 500
Filed and Recorded Oct-29-2007 08:16am
2007-0188622
Linda Carter
Clerk of Superior Court
DeKalb County, Georgia

Recording requested by:
HOMEBANC MORTGAGE CORP.

When recorded mail to:
COUNTRYWIDE HOME LOANS, INC.
DOCUMENT PROCESSING MS:
SV-79C
PO BOX 10423
VAN NUYS, CA 91499-6211
Attn: ASSIGNMENT UNIT

CORPORATION ASSIGNMENT OF MORTGAGE

~~Doc. ID#~~
Commitment# [redacted]

For value received, the undersigned, HOMEBANC MORTGAGE CORP., 2002 SUMMIT BLVD, ATLANTA, GA 30319, hereby grants, assigns and transfers to: COUNTRYWIDE DOCUMENT CUSTODY SERVICES, A DIVISION OF TREASURY BANK, N.A.
1800 Tapo Canyon Road, Simi Valley, CA 93063

All its interest under that certain Mortgage dated 8/12/04, executed by: ANGELA D RODGERS & GWENDOLYN T COOK-SIMS, Mortgagor as per MORTGAGE recorded as Instrument No. 2004-0174967 on 9/02/04 in Book 16552 Page 537 of official records in the County Recorder's Office of DEKALB County, GEORGIA.
Tax Parcel = 15 093 12 015, DEKALB COUNTY TAX COMMISSIONER
Original Mortgage $159,400.00
3261 HARVESTER WOODS ROAD, DECATUR, GA 30034

Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Mortgage.

Dated: 10/05/2007 HOMEBANC MORTGAGE CORP.

By: ______________________
Heidi Smalley, Assistant Secretary

Witness: ______________________
Andrew Bui

State of California
County of Ventura

On 10·8·07 before me, L. Glenn, personally appeared Heidi Smalley, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their duly authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the persons acted, executed the instrument. Witness my hand and official seal.

Signature: ______________________
L. Glenn

L. GLENN
COMM. #1458514
NOTARY PUBLIC - CALIFORNIA
VENTURA COUNTY
My Commission Exp. Dec. 23, 2007

Prepared by: Kathie Tepoxtecatl
1800 TAPO CANYON ROAD SV-79C
SIMI VALLEY, CA 93063
Phone#: (805) 577-4765 Ext: 4765

[redacted]

2013126376 DEED BOOK 23900 Pg 368
Filed and Recorded:
7/17/2013 2:03:53 PM
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

RECORDING REQUESTED BY:
BANK OF AMERICA, N.A.

**WHEN RECORDED MAIL TO:**
Bank of America, N.A.
Document Processing Mail Code:
TX2-979-01-19
4500 Amon Carter Blvd,
Fort Worth, TX 76155
Attn: Assignment Unit
Doc. ID #

*This Space for Recorder's Use Only*

*TITLE OF DOCUMENT:*

# Corrective
# Corporation Assignment of Mortgage

******* THIS CORRECTIVE IS BEING EXECUTED TO INCLUDE SECOND WITNESS IN ACCORDANCE TO GEORGIA LAW ON THAT CERTAIN ASSIGNMENT RECORDED 10/29/2007 IN DEED BOOK 20402 PAGE 500, DEKALB COUNTY, GEORGIA RECORDS.******

THIS SPACE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
(Additional recording fee applies)

059-TITLE PAGE (R7/95)

Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

Recording requested by:
HOMEBANC MORTGAGE CORPORATION
BY COUNTRYWIDE HOME LOANS,
INC., AS AUTHORIZED BY COURT
ORDER.

When recorded mail to:
BANK OF AMERICA
DOCUMENT PROCESSING MAIL
CODE: TX2 979-01-19
4500 AMON CARTER BLVD
603T WORTH, FO RWARDED TO
Attn: ASSIGNMENT UNIT
@

CORRECTIVE CORPORATION ASSIGNMENT OF MORTGAGE

Doc. ID# 88606126942406728
Commitment# 633705

For value received, the undersigned, HOMEBANC MORTGAGE CORPORATION BY COUNTRYWIDE HOME LOANS, INC., AS AUTHORIZED BY COURT ORDER., 2002 SUMMIT BLVD , STE 100, ATLANTA, GA 30319, hereby grants, assigns and transfers to: BANK OF AMERICA, NA SBM TO COUNTRYWIDE BANK NA FKA COUNTRYWIDE BANK, FSB FKA COUNTRYWIDE BANK NA FKA COUNTRYWIDE DOCUMENT CUSTODY SERVICES, A DIVISION OF TREASURY BANK, N.A. 1800 TAPO CANYON RD, SIMI VALLEY, CA 93063

All its interest under that certain Mortgage dated 8/12/04, executed by: ANGELA D RODGERS and GWENDOLYN T COOK-SIMS, Mortgagor as per MORTGAGE recorded as Instrument No. 2004-0174967 on 9/02/04 in Book 16552 Page 537 of official records in the County Recorder's Office of DEKALB County, GEORGIA.
Tax Parcel = 15-093-12-015,
Original Mortgage $159,400.00
3261 HARVESTER WOODS ROAD, DECATUR, GA 30034

Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Mortgage.

Dated: 7.1st.2013

HOMEBANC MORTGAGE CORPORATION BY COUNTRYWIDE HOME LOANS, INC., AS AUTHORIZED BY COURT ORDER.

By ____________________
KATHY ORIARD, ASSISTANT VICE PRESIDENT

Witness: ____________________
JOANN MOTE

____________________
EBONY CLAYBORN

State of California
County of Ventura

On JUL 01 2013 before me, S. Greenwald, Notary Public, personally appeared KATHY ORIARD, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature: ____________________

S. GREENWALD
COMM. 1893744
NOTARY PUBLIC CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires June 25, 2014

Prepared by: Kathy Oriard
1800 TAPO CANYON RD
SIMI VALLEY, CA 93063-6712
Phone#: (213) 345-5072 Ext: 5072

Recording requested by:
BANK OF AMERICA, N.A.
SUCCESSOR BY MERGER TO
COUNTRYWIDE BANK, N.A., FKA
COUNTRYWIDE BANK, FSB FKA
COUNTRYWIDE BANK, N.A., FKA
COUNTRYWIDE DOCUMENT CUSTODY
SERVICES, A DIVISION OF
TREASURY BANK, N.A.

RECORD & RETURN TO
CT LIEN SOLUTIONS
P.O. BOX 29071
Glendale CA 91209-9071

15795

2013158162 DEED BOOK 24033 Pg 262

Filed and Recorded:
9/20/2013 2:06:43 PM
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

CORPORATION ASSIGNMENT OF MORTGAGE

Doc. ID#
Commitment

For value received, the undersigned, BANK OF AMERICA, N.A. SUCCESSOR BY MERGER TO COUNTRYWIDE BANK, N.A., FKA COUNTRYWIDE BANK, FSB FKA COUNTRYWIDE BANK, N.A., FKA COUNTRYWIDE DOCUMENT CUSTODY SERVICES, A DIVISION OF TREASURY BANK, N.A., 101 S. MARENGO AVE., 4TH FL PASADENA, CA. 91101, hereby grants, assigns and transfers to:
SECRETARY OF HOUSING AND URBAN DEVELOPMENT
451 7TH STREET, S.W. WASHINGTON, D.C. 20410

All its interest under that certain Mortgage dated 8/12/04, executed by: ANGELA D RODGERS and GWENDOLYN T COOK-SIMS, Mortgagor as per MORTGAGE recorded as Instrument No. 2004-0174967 on 9/02/04 in Book 16552 Page 537 of official records in the County Recorder's Office of DEKALB County, GEORGIA.
Tax Parcel = 15-093-12-015,
Original Mortgage $159,400.00
3261 HARVESTER WOODS ROAD, DECATUR, GA 30034

Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Mortgage.

Dated: 7/24/13

BANK OF AMERICA, N.A. SUCCESSOR BY MERGER TO COUNTRYWIDE BANK, N.A., FKA COUNTRYWIDE BANK, FSB FKA COUNTRYWIDE BANK, N.A., FKA COUNTRYWIDE DOCUMENT CUSTODY SERVICES, A DIVISION OF TREASURY BANK, N.A.

By ____________________
Lisa Nix, Assistant Vice President

Witness: ____________________
Elizabeth Espana

State of California
County of Los Angeles

On JUL 24 2013 before me, Irma Diaz, Notary Public, personally appeared Lisa Nix, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature: ____________________
Irma Diaz

IRMA DIAZ
Commission # 1903988
Notary Public - California
Ventura County
My Comm. Expires Sep 13, 2014

Prepared by: Lisa Nix
101 SOUTH MARENGO AVE.,4TH FLOOR
PASADENA, CA 91101
Phone#: (626) 486-3550

Date Received: October 7 , 2015

Loan Number: [redacted]

BAYVIEW
LOAN SERVICING, LLC

## Original Doc Checklist

***Initial as each procedure has been completed, noting N/A if not applicable to you.***

JM Enclosed are (2) TWO original copies of Modification Agreement, fully executed and notarized, in the pre-paid FedEx envelope.

Note: Please make sure the borrower did not use whiteout or make any alterations to the documents.

/ Confirm properties located in **Georgia** and **South Carolina** have (2) two witness signatures and date on the Modification Agreement. **(Opp Fund does NOT require witness signatures)**

JM Confirm all dates of the borrower, co-borrower, and notary signatures match.

/ If applicable - A clean copy of both the recorded Divorce Decree and the recorded Quit Claim Deed are included.

/ If applicable - A clean copy of the Death Certificate is included.

____ If applicable - A clean copy of the Marriage License is included.

---

Before signing this document, verify that the content you are signing is correct.

JM
**Workout Coordinator Signature**

10/07/2015
**Date**

After Recording Return to:

Bayview Loan Servicing, LLC
Attn: Collateral Department
4425 Ponce de Leon Blvd., 5th Floor
Coral Gables, FL 33146

*[Space Above This Line For Recording Data]*

## LOAN ADJUSTMENT AGREEMENT

This loan adjustment agreement is made and entered into as of May 21, 2015 (the Effective Date ), by and between, Bayview Loan Servicing, LLC, ("Servicer") and ANGELA D RODGERS and GWENDOLYN T COOK-SIMS ("Borrower").

## RECITALS

A. Servicer is the holder or servicing agent of the holder of that certain Promissory Note ("Note") dated 08/12/2004, executed by Borrower or Borrower's predecessor-in-interest in the original principal sum of $159,400.00 .

B. The note evidences a loan ("Loan") to Borrower or Borrower's predecessor-in-interest on 08/12/2004, in the original principal sum of $159,400.00 along with a Deed of Trust or Mortgage ("Security Instrument") securing said Note. The Security Instrument creates a secured lien on certain real property ("Property") owned by Borrower (and is more specifically described in the Security Instrument). The Note and Security Instrument and all other loan documents related to the Loan are hereinafter collectively referred to as the "Loan Documents".

C. Due to adverse economic circumstances, Borrower has requested Servicer to adjust the scheduled amortization of the Note to permit Borrower to meet Borrower's obligations to Servicer in full and in a timely manner. The requested adjustment will benefit Borrower, Servicer and any junior lien holder, by avoiding the possible foreclosure of the Loan by Servicer. Accordingly, it is considered to be in the best interest of all concerned to enter this Loan Adjustment Agreement ("Agreement").

D. Borrower hereby agrees that this Agreement may only become effective upon Borrower s completion of the Stipulation Agreement dated May 21, 2015. If Borrower successfully completes all the terms of said Stipulation, Servicer will execute this Agreement and adjust the Loan accordingly. However, said execution is subject to Borrower's addressing and clearing of any and all title issues to Servicer s satisfaction. All payments made pursuant to the Stipulation Agreement (with the exception of the down payment mentioned below) will be credited to payments due under this Agreement.

E. Both Borrower and Servicer hereby agree that Servicer may, in its sole discretion, record this Agreement.

## AGREEMENT

NOW, THEREFORE, Borrower and Servicer hereby agree as follows:

**1. NOTE MODIFICATIONS:**

**(a) Outstanding Debt:**

Borrower agrees that the unpaid principal balance due on the Note of $144,348.78 (including credit for Stipulation Agreement downpayment), shall be increased by $0.09 the amount of the unpaid installments, interest, late charges, fees and costs, and, if applicable, any advances for unpaid property taxes and/or insurance premiums ("Unpaid Sums Due"), for a total unpaid principal balance due of $144,348.87 ("New Balance"). Borrower agrees to the accuracy of the allegations contained in the above Recitals as well as to the authenticity and validity of each document referred to herein and to the validity of the unpaid sums due and the New Balance. Borrower agrees to pay the Unpaid Sums Due to Servicer and that he/she has no defenses, claims, or offsets with respect thereto. Interest and payments will accrue on the New Balance at the interest rates, whether adjustable, variable or fixed, provided in the Note, unless modified by this Agreement.

**(b) New Monthly Payments, Payment Adjustments:**

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-3 | 2.905% | 05/01/2015 | $508.87 | $230.02 | $738.89 | 06/01/2015 | 36 |
| 4 | 3.905% | 05/01/2018 | $589.58 | Adjust Annually | Adjust Annually | 06/01/2018 | 12 |
| 5 | 4.905% | 05/01/2019 | $674.35 | Adjust Annually | Adjust Annually | 06/01/2019 | 12 |
| 6 | 5.905% | 05/01/2020 | $762.49 | Adjust Annually | Adjust Annually | 06/01/2020 | 12 |
| 7-40 | 6.500% | 05/01/2021 | $816.11 | Adjust Annually | Adjust Annually | 06/01/2021 | 408 |

Effective on 05/01/2021, Borrower's rate of interest will be 6.50% and will remain fixed for the remaining life of the loan.

**(c) New Maturity Date:**
The maturity date will be 05/01/2055, on which date any unpaid interest and all other sums due shall be paid in full.

**2. ESTABLISHMENT OF IMPOUND/ESCROW ACCOUNT:**
Borrower acknowledges that Servicer will establish an impound/escrow account for the collection of property taxes and insurance premiums if such account is not currently in existence. Servicer will analyze the impound/escrow account from time to time. As a result of this analysis, the escrow portion of Borrower's monthly payment may change. Borrower further acknowledges that the escrow portion of his/her monthly payment may be substantially higher than the estimate. (Note: In certain states, impound/escrow accounts do not collect for payment of taxes pertaining to Bond/Special Assessments and Irrigation/Water District).

**3. AGREEMENT NOT TO ENCUMBER:**
Borrower agrees that it will not voluntarily or involuntarily: (i) grant any interest in or option with respect to, any of the Property; or (ii) create or permit to exist any lien, security interest, or other charge or encumbrance upon or with respect to any of the Property, except for Servicer's already existing security interest and lien, or sell the Property for the benefit of itself or any party or in any manner other than that contemplated by this Agreement.

**4. ASSIGNMENT OF LEASES AND RENTS AND RECEIVERSHIP:**
The existing Mortgage and Note shall be amended to include the following: In the event the loan is in default and Borrowers are generating any gross income from the property by virtue of a tenancy or any other arrangement, Borrowers agree to irrevocably assign and transfer to Servicer the right title and interest of Borrower in all existing and future leases and agreements whether or not in writing, and any rents and deposits derived and collected therefrom, affecting and pertaining to the use enjoyment or occupancy of any part of the premises. Borrower consents to the entry by Servicer, Servicer s agent, or court appointed receiver or designee, to enter the premises to collect the rents and enforce the leases. Borrower further consents and waives opposition to the appointment of a court appointed Receiver in the event the loan is in default.

**5. CHANGE IN FINANCIAL STATUS:**
In the event Borrower or any successor or assignee, shall (i) file with any bankruptcy court of competent jurisdiction or made the subject of any petition under Title 11 of the United States Code, as amended ("Bankruptcy Code"); (ii) be the subject of any order for relief issued under the Bankruptcy Code; (iii) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors; (iv) have sought, or consented to, or acquiesced in, the appointment of by any court of competent jurisdiction approving a petition filed against such party for any reorganization, any trustee, receiver, conservator, or liquidator; or, (v) be the subject of any order, judgment or decree entered arrangement composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors, then, subject to court approval, Servicer shall thereupon be entitled and Borrower irrevocably consents to relief from any automatic stay imposed by Section 362 of the Bankruptcy Code or otherwise, on or against the exercise of the rights and remedies otherwise available to Servicer, including, but not limited to, immediate termination of this Agreement and filing and/ or proceeding with the foreclosure and damage action, and any other remedy as otherwise provided at law in equity, and Borrower hereby irrevocably agrees that he/she shall not object to and hereby irrevocably waives his/her rights to object to Servicer's requests for such relief. This provision is a material inducement for Servicer to enter into this Agreement.

**6. NO OTHER CHANGES:**
Except as expressly adjusted by this Agreement, all of the covenants, agreements, stipulations, and conditions in the Note and the Security Instrument remain unmodified and in full force and effect. The Security Instrument continues to secure on a first and prior lien basis the due and punctual payments of the Note, as modified by this Agreement. None of Borrower's obligations or liabilities under the Security Instrument shall be diminished or released by any provisions herein. Nor shall this Agreement in any way impair, diminish, or affect any of the Borrower's rights or remedies in the Security Instrument whether such rights or remedies arise

herein or by operation of law. Any inserted terms, changes or additions to this Agreement will immediately render it null and void. Borrower is encouraged to review this Agreement with his/her legal advisor prior to signing it, but by signing the below Borrower has voluntarily signed this Agreement.

**7. NO RELIANCE; CONSTRUCTION:**
Each of the parties hereto hereby declares that, prior to the execution of this Agreement, they have apprized themselves of sufficient relevant data in order that they might intelligently exercise their own judgments in deciding on the contents of this Agreement and whether to execute this Agreement. Borrower declares that his/her decision to execute this Agreement is not as a result of undue influence or duress, and not predicated on or influenced by any declarations or representations not set forth in this Agreement, by Servicer, or any other person or party or any predecessors in interest, its successors, assigns, officers, directors, employees, agents or attorneys. Each of the parties hereto hereby further acknowledges and agrees that each of them has had significant input in the development of this Agreement and this Agreement shall not therefore be construed.

**8. NO ORAL MODIFICATION:**
This Agreement may not be amended or modified in any way except by a written instrument executed by all of the parties hereto.

**9. SUCCESSORS AND ASSIGNS:**
This Agreement shall be binding upon and inure to the benefit of the signatories to this Agreement and each of their respective successors and assigns. The obligations of the signatories to this Agreement shall not be delegated or assigned.

**10. ATTORNEY'S FEES:**
In the event that any party hereto brings suit for the collection of any damages resulting from, or the injunction of any action constituting, a breach of any terms or provisions of this Agreement, then the prevailing party shall be entitled to recover all reasonable court costs and attorney's fees, at all levels.

Borrower and Lender agree that if there is a pending foreclosure action that results in a voluntary dismissal as a result of a modification or a similar settlement between Borrower and Lender then Borrower and Lender will each pay for their respective attorney fees and costs and neither party will be responsible for the other parties attorneys fees and costs.

**11. ADDITIONAL AGREEMENTS:**
I agree to the following:

(a) In the event Borrower defaults under this Agreement, without waiving any rights and remedies otherwise available to Servicer, Servicer shall thereupon be entitled to require and Borrower irrevocably consents to enter into either Servicer's Deed-In-Lieu or Short Sale program with respect to the Property. Under the Deed In Lieu program you will voluntarily transfer ownership of the Property to Servicer or Servicer's designee to satisfy the amounts due on the Loan. The Short Sale program is specifically designed to assist with the sale of the Property to avoid foreclosure, even if the sale price may not pay off the amount owed on the Loan.

(b) Borrower will execute such other documents as may be necessary to consummate the terms and conditions of such Deed-In-Lieu or Short Sale program and will cooperate fully with Servicer in obtaining any title endorsement(s), or similar title insurance product(s), and/or affidavit(s) that are necessary or required by the Servicer's procedures in connection with such program(s).

**12. PARTIAL INVALIDITY:**
If any term, covenant or condition of this Agreement or its application to any person or circumstances shall be held to be illegal, invalid or unenforceable, the remainder of this Agreement or the application of such term or provisions to other persons or circumstances shall not be affected, and each term hereof shall be legal, valid and enforceable to the fullest extent permitted by law, unless an essential purpose of this Agreement would be defeated by the loss of the illegal, unenforceable, or invalid provision. In the event of such partial invalidity, the parties shall seek in good faith to agree on replacing any such legally invalid provisions with valid provisions which, in effect, will, from an economic viewpoint, most nearly and fairly approach the effect of the invalid provision and the intent of the parties in entering into this Agreement.

IN WITNESS WHEREOF, Servicer and Borrower have executed this Loan Adjustment Agreement.

Borrower:

By: [signature] Date: May 21, 2015
ANGELA D RODGERS

By: Gwendolyn T. Cook-Sims Date: 5/21/2015
GWENDOLYN T COOK-SIMS

**Servicer:**

By: ______________________ Date: 10/8/15
Vice President, Bayview Loan Servicing, LLC

**Licensed Loan Originator Kanva Bellivesu**
**MLO License Number:** [redacted]
**Direct: 877-650-0140 Ext. 3729 Monday - Friday 9:00 am to 6:00 pm ET**
**Fax: 877-360-9593**

## NOTARY ACKNOWLEDGEMENT

STATE OF Georgia )
)SS
COUNTY OF DeKalb )

On May 21, 2015, before me, Lola F. Williams, a notary public for and within the said county, personally appeared, Angela D. Rodgers and Gwendolyn T. Cook-Sims, as the Borrower(s), personally known to me *(or proved to me on the basis of satisfactory evidence)* to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledge to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) on the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

By: Lola F. Williams

Notary Public: Lola F. Williams

My Commission Expires: January 30, 2016

Notary Public, State of Georgia
My Commission Expires January 30, 2016



BAYVIEW™
LOAN SERVICING

Loan No [redacted]

SERVICER SIGNATURE:

STATE OF FLORIDA §
§
COUNTY OF MIAMI DADE §

On 10/08/2015, before me, J. MARIN, a notary public for and within the said county, personally appeared, DANNY GARCIA of Bayview Loan Servicing, LLC, as Servicer, whose address is 4425 Ponce de Leon Blvd, 5th Floor, Coral Gables, Florida 33146, personally known to me (or provided to me on the basis of satisfactory evidence) to be the person(s) whose name is subscribed to the within instrument and acknowledge to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person acted, executed the instrument.

WITNESS my hand and official seal.

J. MARIN
MY COMMISSION # FF211913
EXPIRES March 19, 2019
FloridaNotaryService.com

By: J. Marin

Notary Public: J. Marin

Notary Public for the State of Florida

My commission expires: 03/19/2019

LOAN #
SVC #
INV #

Multistate

# NOTE

FHA Case No.

August 12 2004
[Date]

3261 Harvester Woods Road
Decatur, GA 30034
[Property Address]

**1. PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means HomeBanc Mortgage Corporation and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of One Hundred Fifty Nine Thousand Four Hundred and no/100------------------------ Dollars (U.S. $ 159,400.00 ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of Six and One Half percent ( 6.500 %) per year until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4. MANNER OF PAYMENT**

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on October ,2004 . Any principal and interest remaining on the first day of September , 2034 , will be due on that date, which is called the "Maturity Date."

**(B) Place**

Payment shall be made at P.O. Box 105750 Atlanta, GA 30348-5750 or at such place as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of U.S. $ 1,007.52 . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for payment adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge ☐ Growing Equity Allonge ☐ Other [specify]

**5. BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

08/12/04
11:41:56 F

LOAN # [redacted]

**6. BORROWER'S FAILURE TO PAY**

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four percent ( 4.000 %) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

[signature] (Seal) -Borrower
Angela D. Rodgers

[signature] (Seal) -Borrower
Gwendolyn T. Cook-Sims

(Seal) -Borrower

(Seal) -Borrower

Countrywide Document Custody Services, A Division of Treasury Bank, N.A.

Pay to the Order of

Without Recourse

HomeBanc Mortgage Corporation

[signature] (Seal) -Borrower

(Seal) -Borrower

Dorothy Cooper

Limited Vice President

(Seal) -Borrower

(Seal) -Borrower